UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x
                                     :

COMMODITY FUTURES TRADING      :
COMMISSION,                                :
                                     :           21 Civ. 870 (JGLC)
             - v. -                :
                                     :

JOHN PATRICK GORMAN III,        :
                                     :
               Defendant.         :
                                     :
---------------------------------------------------- x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO DEFENDANT GORMAN'S BRIEF
REGARDING DISPUTED ISSUES**

EDWARD Y. KIM
Acting United States Attorney
Southern District of New York

Nicholas W. Chiuchiolo
Assistant United States Attorney

- Of Counsel -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 1

PRELIMINARY STATEMENT ....................................................................................... 1

I.  *Brady* Does Not Apply to Civil Litigation and a *Brady* Review Would Violate Grand Jury Secrecy. ......................................................................................................... 4

II.  The Government and CFTC Did Not Conduct a Joint Investigation........................ 7

    A.  Applicable Law ................................................................................................. 7

    B.  Discussion ....................................................................................................... 12

III. Gorman's Sweeping Document Request Has No Basis in Law or Fact ................ 16

CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

646 F. App'x 73 (2d Cir. 2016) ....................................................................................... 8

*Brady v. Maryland*,
   373 U.S. 83 (1963).................................................................................................... 4

*Ferreira v. United States*,
   350 F. Supp. 2d 550 (S.D.N.Y. 2004)................................................................... 10

*In re Sealed Case*,
   801 F.2d 1379 (D.C. Cir. 1986) ............................................................................. 5

*Kyles v. Whitley*,
   514 U.S. 419 (1995).................................................................................................. 7

*Pina v. Henderson*,
   752 F.2d 47 (2d Cir.1985)...................................................................................... 10

*SEC v. Genovese*,
   No. 17 Civ. 3324 (SHS), 2022 WL 4115947 (S.D.N.Y. Nov. 12, 2020) .............. 17

*SEC v. ITT Educ. Servs., Inc*,
   No. 15 Civ. 758, 2017 WL 5508453 (N.D. Ill. Sept. 28, 2017)............................. 5

*SEC v. Neil*,
   No. 14 Civ. 00122 (WHA), 2014 WL 2931096 (N.D. Cal. June 27, 2014) ........... 5

*SEC v. Pentagon Cap. Mgmt.*,
   No. 08 Civ. 3324 (RWS), 2010 WL 4608681 (S.D.N.Y. Nov. 12, 2010)............... 5

*SEC v. Stanard*, No.,
   06 Civ. 7736 (GEL), 2007 WL 1834709 (S.D.N.Y. June 26, 2007) ............... passim

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951).................................................................................................. 3

*United States v. Alexandre*,
   No. 22 Cr. 326 (JPC), 2023 WL 416405 (S.D.N.Y. Jan. 26, 2023) ...................... 16

*United States v. Avellino*,
   136 F.3d 249 (2d Cir. 1998)............................................................................... 7, 14

*United States v. Barcelo* (*Barcelo I*), No.,
   13 Cr. 38 (RJS), 2014 WL 4058066 (S.D.N.Y. Aug. 15, 2014)............................. 9

*United States v. Barcelo,*
(*Barcelo II*), 628 F. App'x 36 (2d Cir. 2015) ................................................................ 8, 9, 13

*United States v. Blaszczak,*
308 F. Supp. 3d 736 (S.D.N.Y. 2018) ...................................................................... 11, 15

*United States v. Bonventre,*
No. 10 Cr. 228 (LTS), 2014 WL 3673550 (S.D.N.Y. July 24, 2014) ................................ 8

*United States v. Brooks,*
966 F. 2d 1500 (D.C. Cir. 1992) ................................................................................ 17

*United States v. Castillero,* No.,
23 Cr. 622 (JMF) ...................................................................................................... 12

*United States v. Chow,* No.,
17 Cr. 667 (GHW) ............................................................................................... 11, 15

*United States v. Collins,*
409 F. Supp. 3d 228 (S.D.N.Y. 2019) ............................................................ 11, 13, 16

*United States v. Finnerty,*
411 F. Supp. 2d 428 (S.D.N.Y. 2006) ......................................................................... 10

*United States v. Fiore,*
381 F.3d 89 (2d Cir. 2004) ........................................................................................ 14

*United States v. Goffer,* No.,
10 Cr. 56 (RJS) .................................................................................................. 13, 15

*United States v. Guerrerio,*
670 F. Supp. 1215 (S.D.N.Y. 1987) ........................................................................... 11

*United States v. Gupta,*
848 F. Supp. 2d 491 (S.D.N.Y. 2012) ............................................................ 6, 16, 17, 18

*United States v. Hunter,*
32 F.4th 22 (2d Cir. 2022) .......................................................................................... 7

*United States v. Hutcher,*
622 F.2d 1083 (2d Cir. 1980) ...................................................................................... 9

*United States v. Ingarfield,*
No. 20 Cr. 146 (RA), 2023 WL 3123002 (S.D.N.Y. Apr. 27, 2023) ......................... 13, 14

*United States v. Locascio,*
6 F.3d 924 (2d Cir. 1993) ........................................................................................... 9

*United States v. Martoma,*
990 F. Supp. 2d 458 (S.D.N.Y. 2014) ......................................................................... 17

*United States v. Meregildo,*
   920 F. Supp. 2d 434 (S.D.N.Y. 2013)............................................................ 8, 9, 10

*United States v. Merlino,*
   349 F.3d 144 (3d Cir. 2003)........................................................................... 10

*United States v. Middendorf,*
   No. 18 Cr. 36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018).......................... 11, 15, 17

*United States v. Morgan,*
   302 F.R.D. 300 (S.D.N.Y. 2014) .................................................................... 10

*United States v. Payne,*
   63 F.3d 1200 (2d Cir. 1995).......................................................................... 7

*United States v. Quinn,*
   445 F.2d 940 (2d Cir. 1971).......................................................................... 7, 10

*United States v. Rhodes,*
   No. 18 Cr. 887 (JMF), 2019 WL 3162221 (S.D.N.Y. July 16, 2019) ............................ 13, 14

*United States v. Rigas,*
   583 F.3d 108 (2d Cir. 2009).......................................................................... 10

*United States v. Rigas,*
   No. 02 Cr. 1236 (LBS), 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008)......................... 11, 13, 15

*United States v. Sells Eng'g, Inc.,*
   463 U.S. 418 (1983).................................................................................. 5

*United States v. Stewart,*
   433 F.3d 273 (2d Cir. 2006).......................................................................... 8, 9, 13

*United States v. Upton,*
   856 F. Supp. 727 (E.D.N.Y. 1994) .................................................................. 11

*United States v. Velissaris,*
   No. 22CR105 (DLC), 2022 WL 2392360 (S.D.N.Y. July 3, 2022) ............................ 8

**RULES**

Fed. R. Civ. P. 34(a) ..................................................................................... 6

Fed. R. Crim. P. 6(e)(2)(E) ............................................................................. 6

Fed. R. Crim. P. 16 ...................................................................................... 6

3

## PRELIMINARY STATEMENT

The United States of America, by and through the Acting United States Attorney for the Southern District of New York (the "Government"), as intervener, respectfully submits this memorandum in opposition to defendant John Patrick Gorman III's request for an order directing the Commodity Futures Trading Commission (the "CFTC") to produce law enforcement records in the exclusive possession of the Government.  (Dkt. 94).  In seeking such an order, Gorman invites the Court to announce a new constitutional rule that has been rejected by nearly every prior court to have considered it, so called "civil *Brady*."  Gorman also invites the Court to pierce grand jury secrecy, in violation of Rule 6 of the Federal Rules of Criminal Procedure, so that the CFTC or Gorman, or both, can rummage through the Government's investigative file for unspecified "discoverable material" that neither could ordinarily access in the absence of a criminal case.  The Court should decline Gorman's invitations for several reasons.

*First*, the criminal *Brady* doctrine does not apply to civil regulatory proceedings and, as a practical matter, could not empower civil parties to review all nonpublic law enforcement files. Among other things, law enforcement files—including the Government's files here—typically contain grand jury materials and work product that is statutorily protected from disclosure and to which neither party in a civil proceeding has access.

*Second*, the Government's files are not in the actual possession or under the control of the CFTC, and the Government and the CFTC did not conduct a joint investigation such that the Government's files are constructively in the CFTC's "possession."  Other than some joint interviews and document sharing, which courts in this District have repeatedly concluded is insufficient for a finding of a "joint investigation," the Government and CFTC conducted completely separate investigations that led to different outcomes.

*Third*, even if there were a joint investigation, and there was not, only documents arising from joint investigative efforts would be subject to a *Brady* review.  Here, the only alleged joint investigative effort consisted of joint interviews, and the Government agreed (prior to Gorman even filing his brief) to disclose all interview notes, which it has done, and therefore there is no additional relief to provide.

Gorman asks this Court to impose drastic changes to the legal landscape concerning parallel investigations.  Those changes would have a serious and long-lasting impact on the commonplace and routine fact-gathering activities of criminal authorities and civil investigators across the country.  Gorman allegedly makes this sweeping request to obtain records that the Government has already provided to him.  There is no legal basis for the unprecedented relief Gorman seeks, and there is no compelling reason to grant it.  Gorman's request should be denied.

## BACKGROUND

This civil enforcement action (the "CFTC Case") arises out of allegations that Gorman, a U.S. dollar swaps trader and managing director of a global investment bank (the "Bank"), engaged in a scheme to deceive and to manipulate the price of U.S. dollar interest rate swap spreads published on a screen displaying prices from a swap execution facility broker firm in the United States. Gorman allegedly engaged in this scheme to benefit the Bank in a separate interest rate swap transaction with a bond issuer.[1]

Gorman asserts that the allegations in the Complaint arose from a lengthy CFTC investigation known as *In re Swaps Trading Related to Bond Issuances* ("STRBI").  (Dkt. 94 at 3).  The Government conducted a parallel criminal investigation into some of the same conduct as

---

[1] The relevant factual allegations are set forth in the CFTC's complaint against Gorman (the "CFTC Complaint").  (Dkt. 1).

in the CFTC's investigation. As part of its investigation, and among other steps, the Government obtained records pursuant to grand jury subpoenas, which were subject to the secrecy requirements imposed by Rule 6(e) of the Federal Rule of Criminal Procedure. The Government's investigation, however, did not give rise to criminal charges and has been inactive for several years.

While there is no criminal case against Gorman, and thus the Government has no discovery obligations to him, the Government has provided records to Gorman in response to his request. Those records did not, however, include grand jury materials. On or about October 21, 2024, Gorman's counsel served on the Government a subpoena and request pursuant to 28 C.F.R. §§ 16.21-16.29, commonly referred to as a "*Touhy* Request,"[2] seeking notes or FBI reports from interviews of employees of the Japan Bank for International Cooperation ("JBIC") in connection with the CFTC matter, STRBI. Just three days later—and nearly two weeks *before* the subpoena's return date—the Government produced to both Gorman and the CFTC the only file in the Government's possession that was responsive to the subpoena—approximately ten pages of notes from a February 18, 2021 interview of Kenji Kanamoto. The Government also emailed counsel for both Gorman and the CFTC, informing them that the Government does not believe that any DOJ or FBI personnel participated in interviews of other JBIC employees. The Government emphasized that it "want[s] to be helpful," and invited the parties to come back to the Government for further requests or questions.

---

[2] The Department of Justice ("DOJ"), like all federal agencies, maintains regulations that apply to requests to DOJ employees for testimony or documents in matters, such as this one, in which the DOJ is not a party. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (authorizing such regulations). The procedural and substantive factors governing the determination are set forth in the agency's so-called "*Touhy*" regulations. *See* 28 C.F.R. §§ 16.21-16.29.

On or about November 4, 2024, counsel for Gorman and the CFTC had a call with the Government to discuss a second request for records.  During that call, counsel for Gorman requested—and the Government agreed to provide—interview notes and reports from all witness interviews that the Government participated in during its investigation, regardless of the CFTC's participation.  Again, the Government offered to be cooperative with both Gorman and the CFTC in connection with further requests.  (*See* Hecker Decl. Ex. 43 (CFTC summary of Nov. 4, 2024 call, "SDNY further invited you to provide requests for the documents you seek and noted a willingness to engage and provide the materials you might be requesting.")).  On November 19, 2024, Gorman's counsel formally sent a *Touhy* request for all interview notes and reports from the Government's investigation, and on December 3, 2024, the Government produced those documents to both Gorman and the CFTC.[3]

The Government has not received further requests for records, either from Gorman or the CFTC, and has produced all of the records that Gorman has requested as of the date of this submission.

I.   ***Brady*** **Does Not Apply to Civil Litigation and a *Brady* Review Would Violate Grand Jury Secrecy.**

As an initial matter, the Government agrees with, and joins in, the CFTC's argument that *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny do not apply in civil matters, such as the CFTC Case.  (*See* Dkt. 104 at 1-12).  The Court should not create a new and sweeping constitutional principle and the Court should be aware that doing so would run contrary to the

---

[3] In its cover letter, the Government noted that it had withheld a three-page interview memo on the basis of the law enforcement privilege, the informant's privilege, and 28 C.F.R. § 16.26(a)(2), (b)(4), and (b)(5).  The Government's letter further noted that the interview in question related to an interview of an individual who was not among those individually named in Gorman's request to the Government.

conclusion reached by nearly every court that has addressed the issue. *See, e.g.*, *SEC v. ITT Educ. Servs., Inc*, No. 15 Civ. 758, 2017 WL 5508453, at *2 (N.D. Ill. Sept. 28, 2017); *SEC v. Neil*, No. 14 Civ. 00122 (WHA), 2014 WL 2931096, at *5 (N.D. Cal. June 27, 2014); *SEC v. Pentagon Cap. Mgmt.*, No. 08 Civ. 3324 (RWS), 2010 WL 4608681, at *2 (S.D.N.Y. Nov. 12, 2010).

In this case specifically, Gorman's proposed rule is also foreclosed by statute. Rule 6(e) imposes secrecy obligations on the dissemination and use of grand jury material. In particular, the review and use of grand jury materials in subsequent civil litigation—as Gorman seeks here—is plainly prohibited by Rule 6(e). *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 433 (1983) (holding that grand jury materials could not be turned over to civil division attorneys and that "use of grand jury materials by government agencies in civil or administrative settings threatens to subvert the limitations applied outside the grand jury context"); *In re Sealed Case*, 801 F.2d 1379, 1382 (D.C. Cir. 1986) (holding that SEC was not entitled to disclosure of documents subpoenaed by grand jury).

In addition to its legal infirmity, the *Brady* requirement that Gorman proposes would also be hopelessly impractical. As envisioned by Gorman, *Brady* requires the CFTC to review everything in the prosecutor's possession for potentially exculpatory information. To conduct such a review, the CFTC would need, for the first time, to gain access to the Government's nonpublic investigative files, internal correspondence and analysis, and grand jury materials. Moreover, as the Government's investigation did not solely relate to Gorman or to the events described in the CFTC's complaint, the CFTC's review would necessarily extend beyond what might actually matter to Gorman. Indeed, in another circumstance a similar request could easily result in a civil agency's review of search warrant returns, wiretap intercepts, victim and identifying information, and national security materials. Nor can the Government do the CFTC's

work for it because the Government is not sufficiently familiar with the CFTC Case or the CFTC's or Gorman's trial strategies to assess what of its files may be favorable to Gorman. *Cf. United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ("[O]nly the USAO is in a position to adequately evaluate whether anything in the SEC memoranda constitutes *Brady* material."). Accordingly, Gorman's rule would effectively subordinate the Government's statutory obligations and control of its own files to the charging decisions and litigating strategies of civil agencies. Such an outcome is untenable and unwise.

Gorman does not dispute the breadth or novelty of this obligation; to the contrary, he has made explicit his desire to have the Court compel the CFTC to review all of the Government's files (likely including grand jury materials) and the Government's own "work product." (Dkt. 94 at 13 and n.37). Gorman needs a new doctrine to justify these requests because existing law would reject them. On the criminal side, Gorman has no right to request discovery of the Government because the Government did not charge him and because he does not fit the category of any person who could petition the Court, pursuant to Rule 6(e), for the disclosure of grand jury material. *See, e.g.*, Fed. R. Crim. P. 6(e)(2)(E); Fed. R. Crim. P. 16. Nor would the Federal Rules of Civil Procedure confer Gorman access to the Government's files. Under Civil Rule 34, parties may request from their adversaries documents "which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a). The Government's investigative file is not in the CFTC's possession, custody or control. The Government has not shared records with the CFTC and the CFTC does not have access to the Government's case file. And the Government is under no obligation to share records with the CFTC that might somehow give the CFTC constructive possession or control over Government materials. Applying Rule 34, the CFTC is not required to review the Government's files.

## II.    The Government and CFTC Did Not Conduct a Joint Investigation

Even if *Brady* were to apply, Gorman's motion should still be denied because the Government's investigative file in this matter is not, and has never been, in the CFTC's possession. The CFTC and the Government conducted separate investigations that concluded in different outcomes—the CFTC commenced an enforcement action and the Government declined to bring criminal charges. Parallel investigations are commonplace and, as courts in this District have repeatedly found, do not convert CFTC attorneys into prosecutors or law enforcement agents working on the prosecution team.

### A.    Applicable Law

"Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). A prosecutor "is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)); *accord United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022).

The Government's duty to obtain and produce Rule 16 and *Brady* material is limited to material in the possession of the prosecution team. *Hunter*, 32 F.4th at 36 ("We have long rejected the notion that 'knowledge of any part of the government is equivalent to knowledge on the part of th[e] prosecutor.'" (quoting *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971))); *Avellino*, 136 F.3d at 255 ("[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.");

*United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2014 WL 3673550, at *22 (S.D.N.Y. July 24, 2014), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016) (*Brady* is "not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense.").

Although "[t]he Second Circuit has not yet articulated a test to decide when knowledge of *Brady* material may be imputed from one agency to another," *United States v. Velissaris*, No. 22CR105 (DLC), 2022 WL 2392360, at *2 (S.D.N.Y. July 3, 2022), the Circuit has provided guidance, and courts within this District have articulated a number of factors for determining the scope of the prosecution team and whether a joint investigation occurred.  The Circuit counsels that "the relevant inquiry [for determining whether a person is a member of the prosecution team] is what the person did, not who the person is."  *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006).  "Individuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo* (*Barcelo II*), 628 F. App'x 36, 38 (2d Cir. 2015).  "At bottom," the determination of who constitutes the prosecution team, "involves a question of agency law: should a prosecutor be held responsible for someone else's actions?"  *United States v. Meregildo*, 920 F. Supp. 2d 434, 443-44 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).  "Generally, a principal is responsible for the knowledge of an agent when that agent has a duty to give the principal information or when the agent acts on his knowledge regarding a matter that is within his power to bind the principal.  An agent's duty to disclose is thus linked to his power to bind the principal." *Id.*  In the context of a criminal investigation and prosecution, the individuals empowered to bind the prosecutor consist generally of those who "actively investigate[] the case, act[] under the direction of the prosecutor, or aid[] the prosecution in crafting

trial strategy." *Meregildo*, 920 F. Supp. 2d at 442; *see also United States v. Barcelo* (*Barcelo I*), No. 13 Cr. 38 (RJS), 2014 WL 4058066, at *9 (S.D.N.Y. Aug. 15, 2014) ("To determine whether someone is a member of the prosecution team—in other words, whether the prosecution can be deemed to have constructive knowledge of information held by that individual—the Court considers the totality of the circumstances, including whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy."), *aff'd*, *Barcelo II*, 628 F. App'x 36.

Applying these principles, the Second Circuit and courts in this District have consistently rejected efforts to impose discovery obligations on the Government related to information held by entities that do not act as agents of the prosecution, including cooperating witnesses, expert witnesses for the Government, other government agencies, and even separate components of the Justice Department. *See, e.g.*, *Barcelo II*, 628 F. App'x at 38 (holding that a cooperating witness was not a part of the prosecution team where he "played no role in the investigation or in determining investigation or trial strategy," and "did no more than provide information to the government and testify at trial"); *Stewart*, 433 F.3d at 299 (holding that a civilian employee of the Secret Service who testified as an expert witness for the Government was not a member of the "prosecution team" for *Giglio* purposes); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (holding that for *Giglio* and Jencks Act purposes, the Government had no discovery obligation related to information filed in an unrelated bankruptcy proceeding); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (holding that the reports made by FBI agents in the course of investigations unrelated to the defendants' prosecutions were not possessed by the prosecution team); *Pina v. Henderson*, 752 F.2d 47, 49 (2d Cir.1985) (holding that a prosecutor's constructive knowledge did not extend to a parole officer who "did not work in conjunction with either the

police or the prosecutor"); *Quinn*, 445 F.2d at 944 (rejecting "completely untenable position that 'knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor'"); *United States v. Morgan*, 302 F.R.D. 300, 304 (S.D.N.Y. 2014) ("[T]he prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation."); *Meregildo*, 920 F. Supp. 2d at 444 ("[I]n most cases, cooperating witnesses should not be considered part of the prosecution team."); *cf. United States v. Merlino*, 349 F.3d 144, 154-55 (3d Cir. 2003) (holding that Government not required to obtain prison calls of cooperating witness to satisfy disclosure obligations).

Thus, the prosecutor's duty extends to reviewing the materials in the possession, custody or control of another agency for *Brady* evidence only where the Government conducts a "joint investigation" with another state or federal agency. *United States v. Rigas*, 583 F.3d 108, 126 (2d Cir. 2009) (affirming district court opinion holding that there was no joint investigation with the SEC and therefore the Government was not in possession of and did not need to produce documents in the custody of the SEC); *SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (finding that facts similar to those here "make clear that the investigations, while they may have overlapped, were not conducted jointly" in denying the defendant's request for the Court to require the SEC to access and review FBI interview notes that were not in the SEC's possession, custody or control); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that the Government and the NYSE, even if it were a state actor, did not conduct a joint investigation related to the policies of the NYSE); *Ferreira v. United States*, 350 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2004) (holding that cooperation between the Government and NYPD was "not sufficient to make the Government and the state prosecutor members of the same prosecutorial team"); *United States v. Upton*, 856 F. Supp. 727, 749-50

(E.D.N.Y. 1994) (holding that the Government and FAA did not conduct a "joint investigation" even though the FAA provided two inspectors to assist the criminal investigation); *United States v. Guerrerio*, 670 F. Supp. 1215, 1219 (S.D.N.Y. 1987) (denying Rule 16 discovery request for grand jury minutes at the Bronx District Attorney's Office where there was no joint investigation with the Government and the Government had no control over the material).

To determine whether the criminal prosecution conducted a "joint investigation" with another agency, such that the other agency should be considered part of the prosecution team, courts consider a number of factors, including whether the other agency "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018)); *see also United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (finding no joint investigation where SEC and Government participated in some joint interviews); *United States v. Chow*, No. 17 Cr. 667 (GHW), ECF No. 69, at 87 (S.D.N.Y. Feb. 9, 2018) (finding no joint investigation where agencies shared information but made their own determinations regarding what documents to obtain and what facts to ask a witness); *accord Stanard*, 2007 WL 1834709, at *3 (FBI and SEC did not conduct a joint investigation despite participating in joint interviews during which only FBI took notes); *United States v. Rigas*, No. 02 Cr. 1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008) (finding that parallel civil and criminal investigations were not "joint").

### B. Discussion

The CFTC is a separate agency that conducted an investigation that was independent of and parallel to the criminal investigation. Notably, unlike nearly every other "joint prosecution" motion litigated in this District, typically involving cases where criminal and civil charges are filed simultaneously, here the Government never brought charges and there is no prosecution at all. As discussed in further detail *infra*, the CFTC is not, and was never, part of the prosecution team, and therefore it is not in "possession" of the Government's files.

In urging the Court to find otherwise, Gorman relies on the facts that: (1) the Government and the CFTC conducted joint witness interviews for some—but not all—witnesses; (2) the Government and the CFTC shared calendar invites for those interviews (*see* Hecker Decl. Exs. 4, 5, 7, 10); (3) the CFTC produced documents to the Government (which are obtainable by Gorman from the CFTC) (*see* Hecker Decl. Exs. 15-25, 28, 30-41); and (4) the Government and the CFTC collaborated on the investigation insofar as personnel from both offices occasionally discussed the investigation. None of these facts bring the CFTC within the ambit of the "prosecution team." To the contrary, the fact that the CFTC participated in witness proffers with the Government (and emailed calendar invites for those proffers) reflects only a typical and unsurprising degree of coordination and does not amount to a joint investigation. Avoiding this type of overlap would require witnesses to sit for multiple interviews; joint interviews promote efficiency for all parties involved in an investigation. In part for this reason, several judges in this District have held that such practices are indicative of parallel as opposed to joint investigations. *See United States v. Castillero*, No. 23 Cr. 622 (JMF), Dkt. 53 at 9-10 (S.D.N.Y. Nov. 18, 2024) (jointly conducted interviews do not support conclusion of joint investigation); *United States v. Goffer*, No. 10 Cr. 56 (RJS), Dkt. 90 (S.D.N.Y. July 29, 2010); *Collins*, 409 F. Supp. 3d at 241 (finding no joint

investigation where SEC and Government participated in some joint interviews); *accord Rigas*, 2008 WL 144824, at *2; *Stanard*, 2007 WL 1834709, at *3 (FBI and SEC did not conduct a joint investigation despite participating in joint interviews during which only FBI took notes).

Gorman also points out that the CFTC shared documents with the Government, but that is entirely normal and appropriate. The Government routinely obtains documents and information from any number of individuals and entities in its investigations on a voluntary (non-grand jury) basis, and the Government is aware of no authority for the proposition that that bare fact transforms those sources of information into members of the prosecution team. To the contrary, courts have specifically rejected that proposition. *See, e.g.*, *United States v. Ingarfield*, No. 20 Cr. 146 (RA), 2023 WL 3123002, at *4 (S.D.N.Y. Apr. 27, 2023) (explaining that the argument that "the SEC was part of a joint investigation with the SDNY because the SEC shared documents with the prosecution team" "has been rightly—and repeatedly—rejected in this district," and collecting cases); *see also Barcelo II*, 628 F. App'x at 38-39 (cooperating witness who provided information to the government not part of the prosecution team); *Stewart*, 433 F.3d at 298-99 (holding that an expert witness who analyzed evidence, assisted the prosecution in preparing cross-examination questions, participated in a mock examination, and testified at trial was not a member of the prosecution team).

Indeed, it would be highly unusual if the SEC or CFTC refused to provide information to the Government in connection with an ongoing criminal inquiry. "Moreover, 'there is no general rule'" prohibiting a civil enforcement agency such as the SEC from "sharing . . . evidence acquired through civil discovery with criminal prosecutors.'" *United States v. Rhodes*, No. 18 Cr. 887 (JMF), 2019 WL 3162221, at *3 (S.D.N.Y. July 16, 2019) (quoting *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004)). "Indeed, because '[s]ecurities fraud is a proper subject of both

administrative and criminal investigations . . . SEC enforcement officials and prosecutors all expect coordination at some investigative level and perceive the various proceedings as integral to each other." *Rhodes*, 2019 WL 3162221, at *3 (quoting *Fiore*, 381 F.3d at 94).

The defendant fails to cite any authority for the proposition that an independent agency becomes part of the prosecution team simply by complying with a voluntary information request. Indeed, if information sharing were a sufficient predicate for a finding of a "joint investigation," nearly ever parallel investigation would be transformed into a "joint investigation," which "would condemn the prosecution of criminal cases to a state of paralysis." *Avellino*, 136 F.3d at 255. That is not the law. *See, e.g.*, *Ingarfield*, 2023 WL 3123002, at *4.

Finally, it is hardly surprising that the prosecutors and the CFTC occasionally discussed their overlapping investigations. Gorman references a handful of occasions—over the course of *six years*—in which CFTC lawyers and the Government discussed their respective investigations. Such "coordination and sharing between the lawyers and agents on the criminal prosecution team, on the one hand, and [a civil enforcement authority], on the other, is, in itself, unexceptional and unproblematic." *Rhodes*, 2019 WL 3162221, at *3.

The typical overlap between investigations that existed here to promote efficiency and reduce costs has been deemed by many judges in this District as indicative of parallel, not joint, investigations. In *Stanard*, for example, then-District Judge Lynch addressed a defendant's discovery request to the SEC to obtain and produce notes and memoranda that were in the possession, custody and control of the Government but which the SEC had reviewed. *Stanard*, 2007 WL 1834709, *2. Acknowledging that the SEC could be considered to have "effective control" over the documents if it conducted a joint investigation with the Government, Judge Lynch instead determined that the facts of the case "ma[d]e clear that the investigations, while

they may have overlapped, were not conducted jointly," and rejected the defendant's argument. *Id.*; *see also Goffer*, No. 10 Cr. 56 (RJS), Dkt. 90; *Rigas*, 2008 WL 144824, at *2; *Stanard*, 2007 WL 1834709, at *3; *Middendorf*, 2018 WL 3956494, at *4-5; *Blaszczak*, 308 F. Supp. 3d at 741-42; *Chow*, No. 17 Cr. 667 (GHW), Dkt. 69, at 87.

Apart from joint interviews and one-way document sharing, most aspects of the Government's investigation were conducted without any involvement of the CFTC:

- the CFTC played no role in the Government's charging decisions or the development of the Government's prosecutorial strategy—indeed, as noted, the CFTC and Government reached different charging decisions;

- likewise, the Government played no role in the CFTC's charging decisions or the development of the CFTC's litigation strategy;

- no one from the CFTC was designated a special Assistant U.S. Attorney to work on the criminal investigation;

- the CFTC and the Government entered into separate proffer agreements with interviewees;

- the CFTC and the Government entered into separate tolling agreements with the subjects and witnesses in their respective investigations;

- the CFTC was not involved in any proceedings (or discussions of such proceedings) before the grand jury;

- the Government has not been involved in litigating the action against Gorman and, until this motion, has not appeared in the matter at all;

- the CFTC did not obtain materials produced to the Government pursuant to grand jury subpoenas;

- neither the CFTC nor the Government accompanied each other to Court.

*See Collins*, 409 F. Supp. 3d at 242 (citing many of these factors in support of a finding that the SEC and the Government did not conduct a joint investigation); *see also United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *6-8 (S.D.N.Y. Jan. 26, 2023) (same). These factors, considered together, weigh heavily in support of a finding that the Government and the CFTC engaged in separate investigations, notwithstanding their focus on overlapping subject material.

In sum, under these facts and circumstances, the CFTC was not part of the Government's prosecution team.

## III.    Gorman's Sweeping Document Request Has No Basis in Law or Fact

Even in the outlier cases where district courts found that the SEC was part of the Government's prosecution team, courts ordered narrow and discrete disclosures.  Gorman, on the other hand, seeks a sweeping review for unspecified "discoverable materials."  For this reason, such a review would be unprecedented and contrary to the law, even if the law supported the claim that such disclosures would be available in a civil case, which it does not.

The cases cited by Gorman do not support an unbounded search.  In *United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012), Judge Rakoff instructed the Government to review for *Brady* only SEC memoranda from witness interviews conducted with the Government.[4]  In *United States*

---

[4] To be sure, *Gupta* and the other cases finding a joint investigation are in a small minority.  *Gupta*, unlike more recent cases to consider the issue, focused almost exclusively on the fact that interviews were conducted together, and not on the other factors considered by courts more recently.  *Compare Gupta*, 848 F. Supp. 2d at 494 ("when it comes to *Brady* disclosures, the relevant contest is one of fact-gathering, not charging determinations or otherwise"), *with Middendorf*, 2018 WL 3956494, at *4 (considering, among other things, charging determinations).  In reaching its limited decision, *Gupta* explicitly relied on the fact that the Government could

*v. Martoma*, 990 F. Supp. 2d 458, 460-62 (S.D.N.Y. 2014), the Government was required to review for *Brady* even less material than in *Gupta*. *See Martoma*, 990 F. Supp. 2d at 462 (Government was obligated to "produce to Defendant communications from the SEC to [two particular witnesses'] counsel, or to [the witnesses] directly, that (1) threaten criminal prosecution of either [witness] if he [did] not implicate [the defendant]; or (2) promise a non-prosecution agreement to either [witness] if he implicates [the defendant]." And in *SEC v. Genovese*, No. 17 Civ. 3324 (SHS), 2022 WL 4115947 (S.D.N.Y. Nov. 12, 2020), the Government was required to disclose a single audio recording. Gorman, in contrast, seeks "discoverable materials" (a term he declines to define) in the Government's file. Gorman does not, and cannot, cite any authority even remotely supporting such a sweeping position.

Gorman's far-reaching request for "discoverable materials" also must be denied because the records he seeks bear no relationship to the Government's alleged joint fact gathering with the CFTC. *Gupta* makes clear that not "all of the documents the SEC prepared and accumulated in its investigation of Gupta are part of the joint investigation." *Gupta*, 848 F. Supp. 2d at 494. Rather, *Gupta* held that the Government's obligation to review for *Brady* extends only to "documents arising from those joint efforts" to "investigate the facts of a case together." *Id.* ("[W]hether parallel investigations are also 'joint' investigations must be evaluated in light of the disclosures being requested.").

Here, the Government and CFTC's alleged joint fact gathering was limited to joint interviews and the Government has already produced the requested material related to those

---

easily access the requested materials. *See Gupta*, 848 F. Supp. 2d at 495 (citing *United States v. Brooks*, 966 F. 2d 1500, 1503 (D.C. Cir. 1992) (holding that prosecutor must search files "particularly when files can be searched 'without any difficulty'")).

interviews.[5] *Gupta*, 848 F. Supp. 2d at 494 (concluding that "the Court need not address whether these notes and memorandum fall within the scope of any 'joint investigation' conducted by the Government and the SEC" where the Government had already agreed to review them for *Brady* material).

At bottom, the Court need not be concerned about some fundamental unfairness here. Gorman's concerns that certain witnesses reside overseas or are otherwise unavailable will not be addressed by the additional disclosures he seeks. Those witnesses reside where they reside regardless of the contents of the Government's files. And Gorman has been given extensive insight into the Government's interactions with potential witnesses and their attorneys—indeed, more extensive insight than he would receive in the typical civil case. There is simply no need for the unprecedented relief that Gorman seeks.

---

[5] As noted above, the Government withheld one set of interview notes based on the informant privilege. Gorman has not requested these materials.

**CONCLUSION**

For the foregoing reasons, the Gorman's motion should be denied.

Dated: New York, New York
December 27, 2024

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney

By: _____s/ Nicholas Chiuchiolo_____
Nicholas W. Chiuchiolo
Assistant United States Attorney
(212) 637-1247