**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>      Plaintiff,<br><br>    v.<br><br>JOHN PATRICK GORMAN III,<br><br>      Defendant. | Case No. 21-cv-00870 |

**DEFENDANT JOHN GORMAN'S REPLY BRIEF**
<u>**REGARDING DISPUTED ISSUES**</u>

Sean Hecker
Michael Ferrara
Helen F. Andrews
Sean Kelly
Thea Raymond-Sidel
Ian Robertson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883

Katherine Epstein
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    The Court Should Apply the *Brady* Rule in This Civil Enforcement Action .................. 2

    II.   The CFTC and USAO's Joint Fact-Gathering Entitles Mr. Gorman to Material Within the USAO's Possession, Including *Brady* and *Giglio* Material ........................................ 8

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                         **Page(s)**

*Brady v. Maryland*,
    373 U.S. 83 (1963) .................................................................................................... *passim*

*DiLeo v. C.I.R.*,
    959 F.2d 16 (2d Cir. 1992) ................................................................................................... 8

*In re First Guar. Metals, Co.*,
    CFTC No. 79-55, 1980 WL 15696 (July 2, 1980) ............................................................... 5

*Kyles v. Whitley*,
    514 U.S. 419 (1995) .............................................................................................................. 4

*In re Ronald M. Schiller & Eugene J. Chesrow, Jr.*,
    CFTC No. 96-4, 2002 WL 2007921 (Sept. 3, 2002) ............................................................ 5

*SEC v. Collector's Coffee, Inc.*,
    337 F.R.D. 70 (S.D.N.Y. 2020) ........................................................................................... 9

*SEC v. ITT Educ. Services, Inc.*,
    2017 WL 5508453 (S.D. Ind. Sept. 28, 2017) ..................................................................... 5

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) .......................................................................................................... 6

*SEC v. Neil*,
    2014 WL 2931096 (N.D. Cal. June 27, 2014) ..................................................................... 5

*SEC v. Pentagon Cap. Mgmt. PLC*,
    2010 WL 4608681 (S.D.N.Y. Nov. 12, 2010) ..................................................................... 2

*SEC v. Sason*,
    No. 19 Civ. 1459 (S.D.N.Y. May 27, 2020) ................................................................... 9, 10

*In re Terrorist Attacks on Sept. 11, 2001*,
    2021 WL 2340411 (S.D.N.Y. June 8, 2021) ........................................................................ 8

*United States v. Adams*,
    2024 WL 4702754 (S.D.N.Y. Nov. 4, 2024) ....................................................................... 7

*United States v. Agurs*,
    427 U.S. 97 (1976) ............................................................................................................... 4

*United States v. Avellino*,
 136 F.3d 249 (2d Cir. 1998) .................................................................................... 6

*United States v. Bagley*,
 473 U.S. 667 (1985) ................................................................................................ 4

*United States v. Edwards*,
 777 F. Supp. 2d 985 (E.D.N.C. 2011) .................................................................... 5

*United States v. Gupta*,
 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ......................................................... 8, 9, 10

*United States v. Manko*,
 1997 WL 107440 (S.D.N.Y. Mar. 11, 1997) .......................................................... 8

*United States v. Martoma*,
 990 F. Supp. 2d 458 (S.D.N.Y. 2014) ..................................................................... 8

*United States v. Middendorf*,
 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) ......................................................... 9

*United States v. Sells Eng'g, Inc.*,
 463 U.S. 418 (1983) ................................................................................................ 8

*United States v. Skelos*,
 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ..................................................... 7, 8

*United States v. Tournant*,
 2023 WL 5001186 (S.D.N.Y. Aug. 4, 2023) .......................................................... 9

**RULES**

Fed. R. Crim. P. 6(e) .......................................................................................................... 7

# PRELIMINARY STATEMENT

When federal agencies like the Commodity Futures Trading Commission (the "CFTC") work hand in glove with federal prosecutors to conduct investigations and later bring actions seeking to deprive individuals of their livelihood, they should be bound by the same obligations imposed on federal prosecutors under *Brady v. Maryland* and *Giglio v. United States*. Here, the CFTC engaged in a years-long, industry-wide investigation, and then decided to sue John Gorman, seeking devastating professional and pecuniary penalties. As part of the CFTC's investigation, it gathered evidence and information in collaboration with the U.S. Attorney's Office for the Southern District of New York (the "USAO") but made the strategic choice to leave the fruits of that joint fact-gathering with the USAO, rather than maintaining possession of that otherwise-discoverable material. For that reason, Mr. Gorman requested that the CFTC, the plaintiff in this civil enforcement action, produce materials within the USAO's possession that arose from the agencies' joint fact-gathering, including materials subject to disclosure under *Brady* and *Giglio*.

The USAO has chosen to align itself with the CFTC's decision to refuse Mr. Gorman's request, adopting the CFTC's arguments against applying *Brady* wholesale. But its arguments do not hold water. The USAO does not grapple with Mr. Gorman's constitutional argument, misunderstands Mr. Gorman's requested relief as an existential threat to law enforcement power and grand jury secrecy, and ignores the case law finding that an agency is required to produce material in another agency's possession even where there is no "joint prosecution." What Mr. Gorman seeks is reasonable and narrow. Because the CFTC's refusal to produce evidence and information in the USAO's possession risks preventing Mr. Gorman from mounting a full defense, the CFTC should be compelled to disclose the fruits of its joint fact-gathering, regardless of whether it is in the CFTC's actual possession or the USAO's.

## ARGUMENT[1]

### I. The Court Should Apply the *Brady* Rule in This Civil Enforcement Action

The *Brady* rule protects a defendant's due process right to a fair trial by leveling the playing field with the government, promoting accurate results, and ensuring the prosecutorial function operates as intended. The CFTC, a federal agency with sweeping investigative powers and resources, has advantages that heavily tilt the playing field in the agency's favor. The agency is using those advantages to try to banish Mr. Gorman from his chosen profession. And it has done so while benefiting from cooperation with prosecutors at the USAO. The USAO resists *Brady*'s application in this case by pointing to a smattering of non-precedential decisions that have rejected *Brady*'s application in the civil context, complaining that disclosing evidence helpful to the defense would be hopelessly impractical, and contending that doing so would be barred by rules governing grand jury secrecy. These arguments do not withstand scrutiny.

*First*, precedent does not foreclose applying the *Brady* rule in a civil enforcement action like this one. The USAO simply does not address Mr. Gorman's constitutional argument that a fair trial requires disclosing exculpatory evidence. In *SEC v. Pentagon Capital Management PLC*, cited by both the USAO and CFTC, the district court declined the defendant's request to apply the *Brady* rule in a civil enforcement action by reasoning that pre-trial discovery not available in criminal cases had adequately protected the defendant's rights. *See* 2010 WL 4608681, at *2 (S.D.N.Y. Nov. 12, 2010) (declining to apply the *Brady* rule "[i]n light of the right to conduct extensive pretrial discovery"). That logic misses the point. The *Brady* rule exists because a fair trial requires disclosing favorable evidence to the accused. *See Brady v. Maryland*, 373 U.S. 83,

---

[1] Citations to "Gorman Br. __" refer to pages of Mr. Gorman's brief regarding disputed issues, ECF 94. Citations to "CFTC Opp. __" refer to pages of the CFTC's brief in opposition, ECF 104. Citations to "USAO Opp. __" refer to pages of the United States of America's brief in opposition, ECF 105.

87 (1963). Pre-trial discovery, no matter how extensive, cannot ensure a fair trial if the government is able to withhold exculpatory evidence. The CFTC's opposition urges that Mr. Gorman can serve additional discovery requests if he believes his existing requests would be insufficient to mount a full defense. *See* CFTC Opp. 5. But Mr. Gorman will still be deprived the fair trial to which he is entitled if the agency refuses to disclose exculpatory evidence it chose not to take into its possession: withholding exculpatory evidence "casts the prosecution in the role of an architect of a proceeding that does not comport with standards of justice." *Brady*, 373 U.S. at 88.

Here, there is special reason to doubt that pre-trial discovery can substitute for the *Brady* rule. The CFTC's discovery conduct has hobbled Mr. Gorman's ability to effectively prepare a defense. The USAO and CFTC bristle at this conclusion. *See* USAO Opp. 18 (arguing that there has not been "some fundamental unfairness here"); CFTC Opp. 6 (characterizing Mr. Gorman's argument as "unsubstantiated" and "conclusory"). But as Mr. Gorman documents in his opening brief, the CFTC's delay, gamesmanship, and obstructionism have been on full display throughout this litigation, including while opposing Mr. Gorman's recent motion to compel. *See* Gorman Br. 8-10. Among other things, the CFTC for months buried the fact that it interviewed multiple individuals employed by the Japan Bank for International Cooperation ("JBIC") concerning topics at the heart of the CFTC's case, like JBIC's expectations about hedging an issuer swap and trading before or during a pricing call. *See* Gorman Br. at 9-10 & 9 n.28. It repeatedly downplayed the self-evident relevance of those interviews. *See, e.g.*, *id.* at 9 & n.31; ECF 91 (Oct. 25, 2024 Conf. Tr.) at 20:10-20. And it continues to refuse to answer basic questions about the underlying investigation, such as identifying the individuals interviewed jointly with the USAO. *See* Ex. 55 (Nov. 19, 2024 Email from S. Painter to S. Kelly).[2]

---

[2] The CFTC has insisted that Mr. Gorman may direct his questions regarding the underlying investigation to the USAO. *See* Ex. 55 (Nov. 19, 2024 Email from S. Painter to S. Kelly). But that, of course, is no justification for the

Moreover, any suggestion that a private party stands on the same footing as the federal government in a civil enforcement action verges on the absurd. The USAO and CFTC balk at Mr. Gorman's assertion that he stands at a disadvantage to the CFTC. *See* USAO Opp. 18 (arguing that Mr. Gorman has been given "extensive insight" into the government's investigation); CFTC Opp. 6-7 (attempting to equate Mr. Gorman and the CFTC's "access to information from JBIC," "access to interview notes in the USAO's possession," and "access to the CFTC's cooperating witness"). But the CFTC, which walks and talks like a prosecutor, wields prosecutorial power. *See* Ex. 1 (CFTC Div. of Enforcement—Enforcement Manual) at 1-2. When the government wields prosecutorial power in criminal cases, fundamental fairness requires disclosing exculpatory evidence. *See Brady*, 373 U.S. at 87. Fundamental fairness compels the same conclusion here.

The CFTC faults Mr. Gorman for not identifying exculpatory documents that the agency has withheld from him. *See* CFTC Opp. 3 n.4 (impugning Mr. Gorman's alleged "fail[ure] to identify a single so-called exculpatory document the CFTC has refused to provide"). But this tack fails too. The prosecution is not freed from complying with the *Brady* rule whenever a defendant does not discover that the prosecution has wrongfully withheld exculpatory evidence or impeachment material. *See United States v. Bagley*, 473 U.S. 667, 680-81 (1985); *see also United States v. Agurs*, 427 U.S. 97, 110-11 (1976). In many instances, a defendant will not know exculpatory evidence exists until the prosecution affirmatively discloses it, which is precisely why *Brady* requires disclosure regardless of whether the defendant requests it. *See Agurs*, 427 U.S. at 106-07; *see also Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). More fundamentally, Mr. Gorman *has* identified favorable evidence that the agency has not produced to him. The CFTC has consistently withheld material likely to aid Mr. Gorman's defense, including the JBIC documents

---

CFTC's discovery conduct and does nothing to resolve Mr. Gorman's current predicament. The USAO, intervening in this action, is opposing Mr. Gorman's effort to obtain evidence and information in the USAO's possession.

and witness interview notes, which the agency produced to Mr. Gorman only after refusing multiple, reasonable requests for production and fighting his motion to compel. *See* Gorman Br. 8-10. Although the CFTC seeks credit for complying with the Court's order to produce these materials, *see* CFTC Opp. 4, the CFTC continues to withhold relevant information about the scope of its underlying investigation, *see* Gorman Br. 4-5.

The additional case law relied upon by the USAO is similarly unpersuasive. In *SEC v. Neil*, the district court declined to extend *Brady* to a civil enforcement action because the defendant had not cited, and the court did not find, any decisions applying *Brady* in the civil context. 2014 WL 2931096, at *5 (N.D. Cal. June 27, 2014). But as Mr. Gorman's opening brief makes clear, courts have applied *Brady* in civil cases, and so has the CFTC in administrative proceedings. *See, e.g.*, *United States v. Edwards*, 777 F. Supp. 2d 985, 996-98 (E.D.N.C. 2011); *In re Ronald M. Schiller & Eugene J. Chesrow, Jr.*, CFTC No. 96-4, 2002 WL 2007921, at *1 n.7 (Sept. 3, 2002). The CFTC's opposition attempts to explain away its own decisions applying *Brady* by noting that there is no general right to discovery in administrative proceedings. CFTC Opp. 11. But that is simply not how the CFTC itself justified applying *Brady*—the agency applied *Brady* because it "is premised upon due process grounds," and its administrative proceedings "may yield substantial sanctions." *In re First Guar. Metals, Co.*, CFTC No. 79-55, 1980 WL 15696, at *9 (July 2, 1980); *see also In re Ronald M. Schiller*, 2002 WL 2007921, at *1 n.7 (acknowledging that *Brady* "is not a discovery rule" (internal quotations omitted)). Mr. Gorman makes the same argument here.

Lastly, in *SEC v. ITT Educational Services, Inc.*, the district court declined to extend *Brady* to a civil enforcement action on the ground that such actions, unlike criminal prosecutions, "will not result in the loss of liberty[.]" 2017 WL 5508453, at *2 (S.D. Ind. Sept. 28, 2017). This argument cannot be squared with *SEC v. Jarkesy*, which represents a sea change in how courts

5

must approach calls for constitutional protections in civil enforcement actions prosecuted by federal agencies like the CFTC. *See* Gorman Br. 11-12. In holding that the right to trial by jury applies where agencies seek to impose monetary penalties that punish and deter, *Jarkesy* recognized that a defendant is not entitled to fewer constitutional protections when the government seeks to deprive an individual's property. *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2130 (2024). Justice Gorsuch's concurring opinion underscored the point, highlighting that due process guarantees apply no less where property is at stake. *See id.* at 2154 (Gorsuch, J., concurring). The USAO fails even to mention *Jarkesy*, let alone grapple with it, while the CFTC relegates Justice Gorsuch's concurrence to a footnote. *See generally* USAO Opp.; *see* CFTC Opp. 11 n.16. The CFTC argues that Mr. Gorman has received "'the regular course of trial proceedings with their usual protections.'" CFTC Opp. 11 n.16. (quoting *Jarkesy*, 144 S. Ct. at 2154 (Gorsuch, J., concurring)). That is no response to his argument that a fair trial requires *Brady* disclosures.

*Second*, the USAO's concerns about practicality quickly fall apart. The USAO reviews investigative files for *Brady* material every day but argues that applying *Brady* here would be untenable because it understands Mr. Gorman to be requesting that the CFTC review "everything" in the government's investigative file. USAO Opp. 5. To be clear, Mr. Gorman is requesting only material that "arose out of [the USAO and CFTC's] joint fact-gathering," Gorman Br. 13, not any and all evidence that resulted from the USAO's independent criminal investigation. According to the USAO, that joint fact-gathering extended little further than joint interviews with witnesses. USAO Opp. 17 ("[T]he Government and CFTC's alleged joint fact gathering was limited to joint interviews[.]"). Accepting that premise, any *Brady* review in this case would be relatively limited and far narrower than the *Brady* reviews that the government routinely conducts in criminal cases. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (noting that a prosecutor's *Brady*

6

review extends to "all information gathered in connection with his office's investigation of the case" and "'any favorable evidence known to others acting on the government's behalf in the case'" (quoting *Kyles*, 514 U.S. at 437)). Mr. Gorman's request is also entirely consistent with the joint fact-gathering case law in this district, which holds that an agency is obligated to produce material arising from joint fact-gathering with another agency that is within the other agency's possession entirely apart from *Brady*. Requiring the CFTC to review the fruits of its joint fact-gathering with federal prosecutors will not subordinate the government's control of its own investigative file, much less paralyze the government's criminal law enforcement powers. *See* USAO Opp. 5-6. Indeed, the CFTC has *already* had access to that file, reviewing the USAO's joint interview notes upon request. *See, e.g.*, Ex. 51 (Jan. 14, 2020 Email from USAO to CFTC).

*Third*, Mr. Gorman's request does not threaten grand jury secrecy. To start, Mr. Gorman does not seek the records that the government "obtained pursuant to grand jury subpoenas[.]" USAO Opp. 3. Mr. Gorman is seeking *Brady* material resulting from the USAO's joint fact-gathering with the CFTC, and the USAO has represented that the CFTC was not involved in any grand jury proceedings. *See* USAO Opp. 15. But even if Mr. Gorman's request for *Brady* material were to reach certain documents produced to the grand jury, Federal Rule of Criminal Procedure 6(e)'s grand jury secrecy provisions do not automatically shield those documents from disclosure. Rule 6(e) shields "what is said or what takes place in the grand jury room." *United States v. Adams*, 2024 WL 4702754, at *4 (S.D.N.Y. Nov. 4, 2024) (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). Rule 6(e) "does not require that a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *United States v. Skelos*, 2015 WL 6159326, at *10 (S.D.N.Y. Oct. 20, 2015) (internal quotation marks and citation omitted). Nor does it preclude disclosure of documents

subpoenaed by a grand jury when the documents are sought "for their own sake rather than to learn what transpired before the grand jury, and their release would not compromise the grand jury proceedings." *United States v. Manko*, 1997 WL 107440, at *3 (S.D.N.Y. Mar. 11, 1997) (cleaned up); *see also In re Terrorist Attacks on Sept. 11, 2001*, 2021 WL 2340411, at *2 (S.D.N.Y. June 8, 2021). At bottom, even if certain grand jury records were found to be shielded from disclosure, the proper course would be for the USAO to withhold those specific records—not any and all exculpatory material unrelated to the grand jury's proceedings. *See Skelos*, 2015 WL 6159326, at *10 ("Rule 6(e) does not apply to disclosures of information obtained independently of the grand jury process[.]").[3]

## II. The CFTC and USAO's Joint Fact-Gathering Entitles Mr. Gorman to Material Within the USAO's Possession, Including *Brady* and *Giglio* Material

The USAO spends the bulk of its opposition arguing that the CFTC should not be required to produce any material within the USAO's possession, including *Brady* and *Giglio* material, because the CFTC was not part of the USAO's "prosecution team." USAO Opp. 7-16. District courts, however, have properly held that a government agency's obligation to review and produce materials in another agency's possession extends where, as here, agencies engage in "joint fact-gathering." *See United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012); *see also United States v. Martoma*, 990 F. Supp. 2d 458, 460-61 (S.D.N.Y. 2014). If agencies engage in joint fact-gathering, evidence arising from that effort may be subject to disclosure, even if the investigations undertaken by the agencies may not be considered a "joint prosecution." *See Gupta*, 848 F. Supp.

---

[3] The USAO's citation to *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 433 (1983) is misplaced. *See* USAO Opp. 5. There, the Supreme Court addressed when federal prosecutors may disclose grand jury materials to government attorneys for the purpose of preparing and pursuing a civil suit. *See id.* at 420-22. The Court held that disclosure is permissible only when the government moves for court-ordered disclosure and makes the requisite showing under the relevant exception set forth in Rule 6(e). *See id.* at 427-28. As explained above, Mr. Gorman is not seeking grand jury materials, and documents subpoenaed by a grand jury do not necessarily constitute grand jury materials shielded from disclosure. *See DiLeo v. C.I.R.*, 959 F.2d 16, 19-20 (2d Cir. 1992), *cert. denied*, 506 U.S. 868 (1992).

2d at 495; Order at 1-2, *SEC v. Sason*, No. 19 Civ. 1459, ECF 86 (S.D.N.Y. May 27, 2020) (hereinafter "*Sason*"). As Judge Rakoff made clear in *Gupta*, where the court held that the USAO's obligations under *Brady* extended to material within the SEC's possession, "it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions[.]" 848 F. Supp. 2d at 494. "[W]hen it comes to *Brady* disclosures, the relevant context is one of fact-gathering, not charging determinations or otherwise." *Id.*[4]

Here, there is no question that the CFTC and USAO engaged in joint fact-gathering. As the USAO accepts, the two agencies conducted joint interviews, held joint proffers, shared documents, and discussed the investigation. USAO Opp. 1, 12. That level of coordination easily satisfies the criteria for joint fact-gathering. *Compare Gupta*, 848 F. Supp. 2d at 494-95, *with SEC v. Collector's Coffee, Inc.*, 337 F.R.D. 70, 75-76 (S.D.N.Y. 2020). The fact that the CFTC purportedly played no role in the USAO's prosecutorial strategy or charging decisions, and the fact that the agencies' investigations did not end in the same place, "have no bearing on joint collection of exculpatory information that *Brady* compels the prosecutor to disclose." *Gupta*, 848 F. Supp. 2d at 494. To the extent the CFTC and USAO's joint fact-gathering resulted in evidence or information subject to disclosure under *Brady* or *Giglio*, the CFTC is required to produce any such material in the USAO's possession to Mr. Gorman. *See id.* at 494-95.

The USAO separately argues that at most the government's obligation would extend to documents arising from the USAO and CFTC's "joint efforts" to "investigate the facts of a case together." USAO Opp. 17 (quoting *Gupta*, 848 F. Supp. 2d at 494). Exactly so. Mr. Gorman's

---

[4] The USAO suggests that *Gupta* has been displaced by more recent cases. *See* USAO Opp. 16 n.4 (citing *United States v. Middendorf*, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018)). Not so. Courts continue to recognize *Gupta*'s conclusion that *Brady* disclosures are required "where two agencies engaged in significant joint fact gathering, and where the discovery material sought by the defense was a direct product of such joint fact gathering." *United States v. Tournant*, 2023 WL 5001186, at *5 (S.D.N.Y. Aug. 4, 2023).

request is cabined to material arising from the agencies' joint fact-gathering. *See* Gorman Br. 13. This includes *Brady* and *Giglio* material. *See id.* (providing example of "a joint interview with the USAO in which exculpatory information was revealed"); *Gupta*, 848 F. Supp. 2d at 495. It also includes any additional discoverable material, namely, material subject to Mr. Gorman's discovery requests to the CFTC. *See* Gorman Br. 15; *Sason* at 1-2 (finding of "joint fact-gathering" required SEC "to produce discoverable material . . . in the sole of possession of [USAO]"). Mr. Gorman is not requesting an "unbounded search" of "'all of the documents the [USAO] prepared and accumulated in its investigation.'" USAO Opp. 16, 17 (quoting *Gupta*, 848 F. Supp. 2d at 494).

Finally, the USAO attempts to moot Mr. Gorman's request arguing that it voluntarily produced notes and reports from joint interviews conducted with the CFTC. USAO Opp. 17-18. While Mr. Gorman sincerely appreciates the USAO's willingness to produce certain notes and reports, that the government has already produced *certain* information related to the agencies' joint fact-gathering is no answer to Mr. Gorman's request. One of the reasons Mr. Gorman has come to the Court for an order compelling the CFTC to produce material in the USAO's possession is because the CFTC has consistently stonewalled Mr. Gorman's reasonable requests for information regarding the extent of the agencies' underlying investigation. This recalcitrance has prevented Mr. Gorman from knowing whether additional evidence or information exists, much less requesting any such evidence or information from the USAO.

## CONCLUSION

For the reasons set forth in Mr. Gorman's opening brief and this reply, the Court should order the CFTC to produce discoverable material in the USAO's possession that arose from the CFTC and USAO's joint fact-gathering, including *Brady* and *Giglio* material.

Dated: January 10, 2025
New York, New York

By: _____/s/ Sean Hecker_____
Sean Hecker
Michael Ferrara
Helen F. Andrews
Sean Kelly
Thea Raymond-Sidel
Ian Robertson
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
mferrara@heckerfink.com
handrews@heckerfink.com
skelly@heckerfink.com
traymond-sidel@heckerfink.com
irobertson@heckerfink.com

Katherine Epstein
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
kepstein@heckerfink.com

*Counsel for Defendant*
*John Patrick Gorman III*

# CERTIFICATE OF COMPLIANCE

I, Sean Hecker, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and contains 3,500 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: January 10, 2025               */s/ Sean Hecker*
     New York, New York            Sean Hecker

                                               *Counsel for Defendant*
                                               *John Patrick Gorman III*