UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                          Plaintiff,

-against-

JOHN PATRICK GORMAN III,

                          Defendant.

21-CV-870 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

       Before the Court is a discovery dispute regarding the scope of the Plaintiff Commodity Futures Trading Commission's ("CFTC") discovery obligations. In particular, Defendant John Patrick Gorman III urges this Court to compel the CFTC (1) to affirmatively search for and disclose any exculpatory evidence, arguing that *Brady* and *Giglio* obligations apply with equal force in the civil enforcement context; and (2) to search for and produce any *Brady, Giglio*, and other "discoverable material," in the possession, custody, and control of the United States Attorney's Office for the Southern District of New York (the "USAO"). Defendant contends these obligations should extend to the USAO because they conducted a "joint investigation" with the CFTC.

       By order dated October 28, 2024, this Court instructed the parties to meet and confer in order to narrow the category of documents to which they could not agree, and to subsequently file briefing with respect to any remaining disagreements. ECF No. 89. Having carefully reviewed the parties' submissions, and considered the circumstances and history of this case, the Court denies Defendant's requests to compel production and impose *Brady* and *Giglio* obligations on the CFTC.

1

I. ***Brady* & *Giglio* Do Not Apply to This Civil Enforcement Action**

The Court first rejects Defendant's contention that *Brady* and *Giglio* obligations, which are generally reserved for criminal cases, should apply to this civil enforcement action. *Brady* and its progeny articulate an affirmative duty of disclosure, implicit in the Due Process Clause of the Constitution, which requires the government to turn over materials which are exculpatory or favorable to a defendant in a criminal case. *Jabar v. U.S. Dep't of Just.*, 62 F.4th 44, 49–50 (2d Cir. 2023). Importantly, unlike in the civil context, this obligation applies *regardless* of whether the defendant requests this information. *Id.* Relatedly, the government must also disclose any information that can be used to impeach the trial testimony of a government witness—this is commonly referred to as "*Giglio*" obligations, per *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny.

As Defendant appears to acknowledge, *Brady* and *Giglio* generally apply only in criminal cases. Nonetheless, Gorman insists that *Brady* and *Giglio* should extend to the civil enforcement context here given, among other things: (1) the power imbalances between the CFTC and himself; (2) the consequences he could face should the CFTC prevail in this action (i.e., losing his ability to continue in his chosen profession); and (3) the need to protect the fairness of any impending trial and Defendant's due process rights. ECF No. 94 ("Mem.").

The application of *Brady* to enforcement actions has been "flatly rejected" by courts. *S.E.C. v. Pentagon Cap. Mgmt. PLC*, No. 08-CV-3324 (RWS), 2010 WL 4608681, at *1 (S.D.N.Y. Nov. 12, 2010). However, *Pentagon* "notes only that in a normal civil case, the Government as plaintiff does not *automatically* have a *Brady* obligation." *United States v. Gupta*, 848 F. Supp. 2d 491, 496 (S.D.N.Y. 2012). Therefore, the Court turns to other cases for guidance on whether extending *Brady* would be appropriate in this case.

Courts to confront this question have recognized a few limited exceptions to the general rule against extending *Brady*. These include: (1) denaturalization or extradition proceedings based on proof of alleged criminal activities of the defendant, *see Demjanjuk v. Petrovsky*, 10 F.3d 338, 353 (6th Cir. 1993); (2) civil commitment proceedings for sexual offenders, *see United States v. Edwards*, 777 F. Supp. 2d 985, 989 (E.D.N.C. 2011); and (3) instances where the defendant is being forced to litigate against nothing but legal conclusions in a "skeleton" complaint, *see E.E.O.C. v. Los Alamos Constructors, Inc.,* 382 F. Supp. 1373, 1374 (D.N.M. 1974).

What underlies these exceptions is the recognition that certain civil punishments are substantial enough to mirror criminal punishment, thus requiring further protections for the defendant. For instance, in *Edwards*, the court noted that civil commitment proceedings implicate the critical question of "whether someone will be locked away." 777 F. Supp. 2d at 994. Relatedly, *Demjanjuk* observed that the consequences in that case (denaturalization and extradition) would "equal or exceed those of most criminal convictions." 10 F.3d at 354. And in *Los Alamos*, the court observed that the government's litigation tactics were problematic and designed to make the case virtually impossible to defend. *Los Alamos*, 382 F. Supp. at 1374.

These exceptions do not apply here. This case is not one where the potential consequences—financial penalties and permanent enjoinment from registering with the CFTC, which may limit Gorman's career—exceed that of *most* criminal convictions. *Demjanjuk*, 10 F.3d at 354. The fact that Gorman faces "potentially serious civil penalties does not turn the [CFTC's] claims into criminal charges." *Pentagon,* 2010 WL 4608681, at *2 (internal citation omitted). Nor does Gorman face the risk of losing his liberty or "being locked away." *Edwards*, 777 F. Supp. 2d at 994. And while Gorman points to the possibility that he cannot continue with

3

his chosen profession, this argument has already been squarely rejected as inadequate. *See Brodie v. Dep't of Health and Human Services*, 951 F. Supp. 2d 108, 119 (D.D.C. 2013) (concluding that where doctor faced potential debarment that would damage "his reputation, his ability to practice in his chosen profession, and his ability to earn a livelihood" did not fit the "unusual set of circumstances" required for an exception to apply).

None of the cases cited by Gorman compel a different result. For instance, Gorman cites *Edwards*, but ignores that this case explicitly limited its holding to 18 U.S.C. § 4248 cases. *Edwards*, 777 F. Supp. 2d at 986. *Gupta* is also distinguishable: unlike in *Gupta*, here, there is no parallel criminal proceeding that Gorman must also defend against. *United States v. Gupta*, 848 F. Supp. 2d 491, 496 (S.D.N.Y. 2012). Indeed, the instant case is the very type of "normal civil case" that Judge Rakoff mentioned in *Gupta* in which *Brady* would generally not apply. *Id.*

Gorman's reliance on *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024) is similarly misplaced. In *Jarkesy*, the SEC brought an enforcement action seeking financial penalties for alleged securities violations. Generally, the SEC can initiate enforcement actions "in-house"—meaning the matter will be adjudicated by one of the SEC's administrative law judges—or in federal court. The SEC's choice of forum dictates the procedural protections enjoyed by the defendant, and the remedies available to the SEC. *Jarkesy*, 603 U.S. at 116–17. Because the SEC in *Jarkesy* opted to adjudicate the matter "in-house," the Supreme Court considered whether the action was "legal in nature" such that the Seventh Amendment right to a jury trial would apply. *Id.* at 122–23. The Supreme Court held that, because the SEC sought civil penalties, which were "designed to punish and deter, not to compensate," the Seventh Amendment right to a jury trial had been implicated. *Id.* at 123–125.

Nothing in *Jarkesy* supports extending *Brady* or *Giglio* to the instant case. For one, *Jarkesy* dealt with construing language in the Seventh Amendment. Moreover, unlike in *Jarkesy*, here the SEC has pursued this matter in federal court, meaning that Gorman has not lost any of the "procedural protections" ordinarily available: the Federal Rules of Evidence, the ordinary rules of civil discovery, and his ability to have a jury make factual determinations. *Id.* at 117. Indeed, the very concurrence that Gorman cites (Mem. at 11–12) further highlights the lack of prejudice he faces in the present case:

> After an agency files a civil complaint in [federal] court, a defendant may obtain from the SEC a large swathe of documents relevant to the lawsuit. He may subpoena third parties for testimony and documents and take 10 oral depositions—more with the court's permission. A court has flexibility, as well, to set deadlines for discovery and other matters to meet the needs of the case. And come trial, the Federal Rules of Evidence apply, meaning that hearsay is generally inadmissible and witnesses must usually testify in person, subject to cross-examination. [But] [t]hings look very different in agency proceedings.

*Id.* at 143 (cleaned up) (internal citations omitted). Therefore, contrary to Defendant's contention, *Jarkesy* does not create a "sea change" in the law declining to extend *Brady* to most civil enforcement actions, litigated in federal court, in the absence of a parallel criminal proceeding. ECF No. 106 at 5–6.

The present case poses no serious risk of prejudice to Gorman, his due process rights, or the fairness of any forthcoming trial. "[U]nlike criminal prosecutions where *Brady* is essential to protect constitutional rights, civil litigants can use discovery to obtain" any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Brodie*, 951 F. Supp. 2d at 119 (cleaned up); *see* FED. R. CIV. P. 26(b)(1). Gorman has had the opportunity to engage in extensive pretrial discovery and avail himself of the procedures afforded by the Federal Rules. He has received over 500,000 pages of documents, initial disclosures identifying key individuals and witnesses, and likely received exculpatory

5

information as a result. ECF No. 104 at 3–4. Furthermore, while Gorman has identified documents the CFTC has allegedly not produced (such as interview notes and privileged emails), Gorman merely speculates any such documents would be exculpatory. And Gorman only further argues that the CFTC has allegedly "prevented him from knowing" the full scope of any exculpatory witnesses that may exist.[1] Mem. at 9.

In short, Gorman does not face a severe or serious loss of liberty or personal freedom to warrant the extension of *Brady* and *Giglio*, and the Court thus declines to extend those obligations to this case. *See U.S. v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 341–43 (D.D.C. 2012) (declining to extend *Brady* to civil case involving alleged violation of 18 U.S.C. § 209 even where the defendant claimed the government failed to disclose exculpatory evidence, improperly coached a witness, and elicited perjury); *id.* at 342 (collecting cases and noting that in "many" cases, courts have found that *Brady* is not applicable in civil proceedings).

### II. The CFTC Has No Additional Obligation to Produce Documents in the USAO's Possession

Gorman next argues that the CFTC and USAO conducted a joint investigation. Mem. at 13–14. As a result, according to Gorman, the CFTC must identify and produce *Brady* and *Giglio* obligations in the USAO's possession. Mem. at 15. But because the Court has declined to extend *Brady* to the instant case, it similarly declines to compel the CFTC to search for and produce *Brady* documents in the USAO's custody and control. In other words, because the Court has determined no *Brady* obligation exists here, there is no obligation to extend that would cover a search of the USAO's files. *Cf.* FED. R. CIV. P. 34(a)(1) (a party may serve discovery requests to

---

[1] To be sure, these documents may certainly be relevant under Rule 26, in which case Gorman would be entitled to any nonprivileged materials, provided his demands are reasonable and proportional to the needs of the case. However, because the instant dispute focuses only on alleged *Brady* and *Giglio* obligations, this Order makes no ruling with respect to any such issues.

require the responding party to produce documents in their "possession, custody, or control"). After all, it would make little sense to impose an obligation on the CFTC as to materials in the possession of another agency but not as to its own files.

Courts have indicated that the "joint investigation" analysis extends, not creates, *Brady* obligations. For instance, as the court observed in *United States v. Middendorf* (a case which promulgated factors to consider in whether a "joint investigation" occurred):

> The *prosecution's obligation to disclose Brady material extends* to any material in the possession of any entity that has acted as an 'arm of the prosecutor' in a given case. In other words, where the prosecution conducts a 'joint investigation' with another state or federal agency, courts in [the Second Circuit] *have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for Brady evidence*.

*Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (cleaned up and emphases added). The "joint investigation" analysis therefore only arises where a defendant argues the government has not completed or complied with its *Brady* obligations. But here, the Court has determined no such obligations exist. The Court therefore need not decide whether the CFTC and USAO conducted a joint investigation, as no general obligation would arise therefrom. *Cf. United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) (concluding that a joint investigation required *Brady* disclosure where defendant challenged the government's satisfaction of those obligations); *United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012) (similar).

Even if the Court needed to consider this question, the applicable factors would not support a finding of a joint investigation between the CFTC and USAO. Several factors relate to the joint investigation analysis, including whether the USAO: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in

7

the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Middendorf*, 2018 WL 3956494, at *4.

Here, Gorman argues a joint investigation occurred because, among other things, the CFTC gave the USAO access to its files; the CFTC and USAO conducted joint interviews and proffers; and the CFTC and USAO exchanged documents and emails about the case. Mem. at 3–4. These examples do not support a conclusion that the USAO acted as an "arm" of the CFTC. The USAO never brought charges against Gorman, and the CFTC did not participate in any grand jury proceedings even if the USAO convened them (Factor 2). ECF No. 104 at 13; ECF No. 105 at 7. Neither the CFTC nor the USAO participated in the charging decisions of the other (Factor 4). ECF No. 105 at 15. Further, because the USAO never charged Gorman, they have not appeared for court proceedings, and Gorman has not alleged that the USAO accompanied the CFTC to any such proceedings (Factor 5). Indeed, the USAO only appeared in this action to intervene with respect to the instant dispute. And critically, the USAO "has not shared records with the CFTC and the CFTC does not have access to [the USAO's] files." *Id.* "Courts have been particularly hesitant to find a joint investigation where the document sharing only went in one direction." *United States v. Ingarfield*, No. 20-CR-146 (RA), 2023 WL 3123002, at *4 (S.D.N.Y. Apr. 27, 2023).

In short, while the CFTC's and USAO's investigations may have overlapped, they were not conducted "jointly" such that the USAO acted as "an arm of the [CFTC]" with respect to the instant civil enforcement proceeding. *Middendorf*, 2018 WL 3956494, at *4. At most, the CFTC and USAO conducted parallel investigations, each acting at their own direction and in a manner consistent with "unexceptional" collaboration. *See United States v. Rhodes*, No. 18-CR-887 (JMF), 2019 WL 3162221, at *3 (S.D.N.Y. July 16, 2019) (denying defendant's motion for

8

discovery and noting, among other things, that "the fact that . . . there was coordination and sharing between the lawyers and agents on the criminal prosecution team, on the one hand, and the SEC, on the other, is, in itself, unexceptional and unproblematic.").

The Court also rejects Gorman's contention that the CFTC has an obligation to generally produce "discoverable material" in the possession of the USAO. As an initial matter, that request is facially overbroad, and the cases cited by Gorman both involved instances where the court found *an existing Brady obligation. See United States v. Tournant*, No. 22-CR-276 (LTS), 2023 WL 5001186, at *6 (S.D.N.Y. Aug. 4, 2023) (observing that *Gupta* and *Martoma* only required disclosures, as part of *Brady* obligation, in response to "relatively narrow discovery requests" unlike Gorman's). Furthermore, Gorman has already requested, and received, documents from the USAO notwithstanding that lack of obligation. ECF No. 105 at 17–18. And Defendant fails to cite any authority supporting the conclusion that a civil enforcement agency must necessarily produce information in the possession of a separate, criminal enforcement agency absent a recognized *Brady* obligation or parallel criminal proceeding.

As such, the CFTC is not obligated to search for or produce materials in the USAO's possession.

## CONCLUSION

For the foregoing reasons, Defendant's requests to compel are DENIED. Consistent with this Court's prior order (*see* ECF No. 93) the parties are directed to confer and to submit a revised case management plan **within one week** of the date of this Order.

Dated: July 15, 2025  
      New York, New York

SO ORDERED.

*Jessica Clarke*  
_____  
JESSICA G. L. CLARKE  
United States District Judge